Hearing Date: June 9, 2010
Hearing Time: 9:30 a.m.
Objection Deadline: June 2, 2010

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

In Re:

COUNTRY IMPORTED CAR CORP.,

　　　　　　　Debtor.

Case No.: 10-71817-AST

Chapter 11

## DECLARATION OF JONATHAN SOBEL IN SUPPORT OF MOTION BY SECURED LENDERS FOR RELIEF FROM THE AUTOMATIC STAY, PURSUANT TO 11 U.S.C. § 362(d)(1) AND (2)

Jonathan Sobel, of full age, declares as follows:

1.　　　I am the managing member of both Madison Acquisition Group, LLC ("MAG") and DTF Holdings, LLC ("DTF"), which, collectively, are referred to herein as "Lender." I am authorized to make this declaration in support of Lender's motion for relief from the automatic stay, pursuant to 11 U.S.C. § 362(d)(1) and (2).

2.　　　I am fully familiar with the facts stated herein, which are based upon my personal knowledge and information contained in the business records of Lender, which are maintained in the ordinary course of Lender's business. As to any matters of opinion or matters stated upon information and belief, I believe them to be true and correct.

3.　　　Debtor is a New York corporation that was in the business of selling high-end luxury cars manufactured by the BMW Group. Debtor operates BMW of the Hamptons (the "BMW Dealership") on leased property located at 35 Montauk Highway, Southampton, New York, and operates MINI of the Hamptons (the "MINI Dealership") on leased property located at

749 County Road 39A, Southampton New York.

4.    For many years prior to the bankruptcy filing, Debtor obtained floor plan and working capital financing from North Fork Bank ("North Fork").  On or about February 1, 2007, Debtor executed a certain Credit and Security Agreement (the "Loan Agreement") with North Fork and obtained up to $20,072,203 of floor plan financing.

5.    The Loan Agreement was modified on July 24, 2007, which modification reallocated and reduced the available floor plan financing to $14,655,000.00 and extended the maturity date to June 24, 2008.

6.    The Loan Agreement was modified by the Second Modification Agreement effective as of May 21, 2008, between Debtor and Capital One, N.A. ("Capital One"), successor by merger to North Fork; by a Third Modification Agreement effective as of August 25, 2008, and by a Fourth Modification effective as of June 15, 2009.

7.    In the Third Modification to the Loan Agreement, Debtor acknowledged that as of March 20, 2009 it was "out of trust" in the aggregate amount of $2,211,113.00.  In the Fourth Modification, Debtor again acknowledged the existence of an Event of Default (as defined in the Loan Agreement) and further acknowledged that as of August 7, 2009 it was "out of trust" in the aggregate amount of $1,822,276.00.

8.    A true and correct copy of the Loan Agreement and its modifications, as maintained by Lender, is annexed hereto as Exhibit A.

9.    To secure Debtor's repayment obligations under the Loan Agreement, Debtor granted North Fork a security interest in substantially all of its assets, including without limitation, inventory, equipment, accounts, accounts receivable and intangibles.  All of Debtor's personal property pledged under the Loan Agreement shall hereinafter, collectively, be referred

1236992.2

to as the "Collateral".

10.    The Loan Agreement also secures Debtor's guaranty obligations for debt owed by affiliated entities of Debtor to North Fork.

11.    North Fork perfected its security interest in the Collateral by filing an original Uniform Commercial Code Financing Statement (UCC-1) with the Secretary of State of New York on April 14, 1997 (Financing Statement No. 074538-NY SOS), which Financing Statement was continued by the filing of UCC-3 Continuation Statements on November 21, 2001 and on October 20, 2006.  North Fork also filed a UCC-1 with the Secretary of State of New York on October 9, 2001 (Financing Statement No. 192252-NY SOS), which financing statement was continued by the filing of UCC-3 on April 24, 2006.  True and correct copies of the said UCC-1s and UCC-3 Continuation Statements are annexed hereto, collectively, as Exhibit B.

12.    Subsequent to the Fourth Modification to the Loan Agreement, Debtor again defaulted.  By letter dated January 8, 2010, Capital One gave Debtor notice of default and of Capital One's election to declare Debtor's direct loan, with an outstanding principal balance of $4,206,238.00, together with accrued interest and applicable fees, including late fees, as of January 8, 2009, to be immediately due and payable, together with reasonable attorneys' fees (the "Default Notice").  A true and correct copy of the Default Notice, as maintained by Lender, is annexed hereto as Exhibit C.

13.    Lender owns all of Capital One's claims against Debtor, including claims guaranteed by Debtor for its affiliated entities.  Debtor owes Lender in excess of $4,206,238 in principal, unpaid interest and fees, which amount continues to accrue by virtue of Debtor's default under the Loan Agreement.  Debtor is also liable to Lender in the approximate amount of $3.5 million for its guaranty obligations.

3

14.    In addition to Lender's perfected security interest in the Collateral, a search of the New York State Department of State UCC Filing data reflects UCC-1's filed against the Debtor as follows: (i) BMW of North America, LLC, reflecting a purchase money security interest in BMW/Mini motor vehicles, parts and related items,[1] (ii) Ford Motor Credit Company, LLC, reflecting a broad lien on assets, including equipment, goods, vehicles, accounts and intangibles,[2] (iii) East Hills Management Services, Ltd., reflecting a broad lien on all assets,[3] as well as a UCC-1 filed by Trinity Capital Corporation, relating to leased automotive equipment,[4] which is not part of Lender's Collateral.    A true and correct copy of the UCC-1 Financing Statements and UCC-3 Continuation Statements filed by or on behalf of the above referenced creditors are annexed hereto, collectively, as Exhibit D.

15.    A judgment search reflects a judgment entered in favor of Local 210 Unity Welfare and Pension Fund and Local 210 AFL-CIO, filed on October 22, 2009, in the amount of $291,856.76, for unpaid fringe benefit contributions, and a judgment lien filed on January 8, 2010 by the New York State Department of Taxation, in the amount of $1,207,759.10.    True and correct copies of documents evidencing the said judgments are annexed hereto, collectively, as Exhibit E.

16.    Debtor's current assets are greatly diminished.    Upon information and belief,

---

[1] Original filing on July 8, 2002, Financing Statement No. 157741-NY SOS, and continuation filed on January 24, 2007.

[2] Original filing on February 13, 2009, Financing Statement No. 200902138056145-NY SOS.

[3] Original filing on February 22, 2010, Financing Statement No. 20100228057062-NY SOS.

[4] Original filing on February 26, 2003, Financing Statement No. 200302260426680-NY SOS, and continuation filed on December 26, 2007.

4

Debtor has not had floor plan financing for either the BMW Dealership or MINI Dealership for over a year and a half and, consequently, has no new car inventory. Upon further information and belief, Debtor's used car inventory is vastly reduced, consisting of approximately 33 vehicles and Debtor's operations at both dealerships have all but ceased.

17.     Debtor does not have consent to use Lender's cash collateral, and, upon information and belief, Debtor has not sought, nor does it have, any commitment for obtaining debtor-in-possession financing.

18.     Lender believes the present value of the Collateral, which includes used automobile inventory that diminishes in value daily, does not exceed $3,000,000.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was signed on this _?¦_ day of May, 2010, at New York, New York.

_____
JONATHAN SOBEL

EXHIBIT "A"

# *NORTH FORK BANK*
## CREDIT AND SECURITY AGREEMENT
### (Wholesale)

CREDIT AND SECURITY AGREEMENT dated February 1, 2007, by and between

**NORTH FORK BANK**, a New York banking corporation (the **"Bank"**)

-and-

**COUNTRY IMPORTED CAR CORP.**, a New York corporation (the **"Dealer"**).

The Dealer engages in the retail business of buying, selling and generally dealing in goods of various types and in connection therewith, may desire to finance its acquisition of such goods. The Dealer desires that the Bank finance all or a portion of the purchase price of such goods and the Bank may, in its sole and absolute discretion, extend credit from time to time to the Dealer to provide such financing. In consideration of the foregoing and the mutual agreement herein contained, and in order to induce the Bank, in its sole and absolute discretion, to extend credit from time to time to the Dealer, the parties hereto agree as follows:

1.    Definitions. As used in this Agreement:

(a)    The term **"Inventory"** means all Financed Inventory and all other new and used goods of every kind and description held for sale or lease by the Dealer, together with all attachments, parts, accessions, additions and substitutions, including all returns and repossessions, packaging and instructions related thereto and products thereof, and all documents and documents of title covering or related to any and all of the foregoing.

(b)    The term **"Financed Inventory"** means the following with respect to items acquired in whole or in part with Advances (as defined below).

(Check appropriate box)

- [ ] (i) All inventory of sailboats, power boats, and other vessels whether or not self-propelled and all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, radar, sonar, radio, navigational devices, related parts and supplies.
- [x] (ii) All inventory of motor vehicles of every kind and description including, without limitation, all automobiles, trucks, recreational vans, motor homes, trailers, and motorcycles, all accessions and attachments thereto and related parts.
- [ ] (iii) All inventory of aircraft frames, engines, propellers, navigational equipment and related parts (collectively the **"Aircraft"**).
- [ ] (iv) Other inventory_____

(Describe)

(c)    The term **"Collateral"** means all of Dealer's right, title and interest in and to the following, whether now owned or existing or hereafter acquired or created, whether or not now or hereafter in the custody or possession of the Dealer and wherever located: All Inventory; all equipment (including but not limited to all furniture and furnishings) and fixtures; all reserves, holdbacks, rebates, bonuses and commissions payable from time to time by any manufacturer or distributor of Inventory to the Dealer; all deposit balances and credits with the Bank; all accounts, all contract rights and chattel paper, all general intangibles, all goods, all instruments, all documents of title and the proceeds of all of the foregoing and, to the extent not otherwise included, all payments under insurance (whether or not the Bank is the loss payee thereof), and condemnation award, and any indemnity, warranty or guaranty, payable by reason of loss or damage to or otherwise with respect to any of the foregoing Collateral and all property received wholly or partly in trade or exchange for Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease, license, encumbrance, collection, or any other temporary or permanent disposition of the Collateral or any interest therein.

The term **"Collateral"** to also include a mortgage lien ("the Mortgage") on property known as, and located at 51-55 Montauk Highway, Southampton, County of Suffolk, State of New York formally described on the Tax Maps of the said County of Suffolk as District 0900, Section 133.00, Block 01.00, Lot 027.001 (the "Premises") in the amount of $2,100,000 .

(d)    The term **"Dealer's Advance Account"** means the floor plan account on the books of the Bank in which will be recorded advances made from time to time by the Bank to the Dealer under this Agreement (each such advance being an **"Advance"** and collectively the **"Advances"**), payments

made on such Advances, and other appropriate credits and debits as provided in paragraph 5 hereof.

(e) The term **"Obligations"** means all indebtedness, liabilities and obligations of the Dealer to the Bank now or hereafter arising, whether incurred as maker, principal, surety, endorser, guarantor, accommodation party, indemnitor or otherwise, whether direct or indirect, contingent or absolute, matured or not yet due, whether for principal, interest, fees, expenses, premiums or otherwise (including, without limitation, all such indebtedness, liabilities and obligations arising from time to time under this Agreement).

(f) The term **"Capital Base"** shall be defined as: (a) the sum of (i) Net Worth of the Dealer as shown on its financial statements and (ii) long term debt that is subordinated to the Bank in form and substance satisfactory to the Bank, less (b) the sum of (i) Loans, advances, investments, payments, prepayments and other amounts to the owners or employees of the Dealer, (ii) Goodwill and all other general intangibles, (iii) Investments in or advances to any other entities or assets not directly related to the business of the Dealer and (iv) any other assets of the Dealer deemed by the Bank to be worthless or uncollectable.

(g) The term **"Leverage"** shall mean the ratio of total unsubordinated liabilities less floor plan debt of the Dealer divided by the Capital Base.

(h) The term **"Vehicle Equity"** shall mean the sum of (a) cash and equivalents, contracts in transit, vehicle receivables, factory holdback receivable and vehicle inventory of the Dealer _less_ (b) floor plan Obligations outstanding on vehicle inventory and customer deposits.

(i) The term **"Vehicle Equity Ratio"** shall mean the ratio of (a) the sum of (i) cash and equivalents, (ii) contracts in transit, (iii) vehicle receivables, (iv) factory holdback receivables and (v) vehicle inventory of the Dealer, divided by (b) the sum of (i) floor plan Obligations outstanding on vehicle inventory and (ii) customer deposits.

(j) The term **"Bank"** shall mean North Fork Bank, its affiliates and subsidiaries and their respective successors, transferees and assigns.

All terms not otherwise defined in this Agreement are used herein as defined in the Uniform Commercial Code in effect in New York (the **"Code"**).

2. <u>Grant of Security Interest</u>. The Dealer hereby assigns and pledges to the Bank and hereby grants to the Bank a security interest in and lien upon, all of the Dealer's right, title and interest in and to the Collateral. This Agreement and security interest granted hereunder secure payment and performance of the Obligations. If any payment required hereunder is not made on time, or if all the Obligations become due and payable and are not paid, whether by acceleration on default, termination, or otherwise, all or part of the amount due may be offset out of any account or other property which the Dealer has at the Bank or any affiliate of the Bank without prior notice or demand. This provision is in addition to and not in limitation of any right of common law or by statute.

3. <u>Representations and Warranties</u>. The Dealer represents and warrants to the Bank that it owns the Collateral free and clear of all liens, mortgages, encumbrances, claims and charges, that it has full authority to execute and deliver this Agreement and to grant the security interest hereunder, that no effective financing statement, mortgage or other instrument similar in effect covering any of the Collateral is on file in any public filing, recording or registration office, except such as may have been filed, recorded or registered in favor of the Bank. The address of the principal place of business of the Dealer is correctly set forth at the end of this Agreement. The Dealer is in compliance with and in good standing under each franchise or distribution agreement with manufacturers and/or distributors of Financed Inventory to which the Dealer is a party. All representations made by the Dealer to the Bank and information heretofore supplied by the Dealer to the Bank in connection with its application to enter into this Agreement are true, accurate and complete when made as of the date hereof. If the Financed Inventory consists of Aircraft, the Dealer is, or concurrently with the completion of the transactions contemplated by this Agreement, will be the registered owner of any Aircraft pursuant to a proper registration under the Federal Aviation Act of 1958, as amended and the Dealer is qualified in all respects as a citizen of the United States as defined in such act. All existing Inventory is currently and any future Inventory will be located at the following location(s):

(1) 35 Montauk Highway, Southampton, NY 11968

(2) 32 Montauk Highway, Southampton, NY 11968

(3) 759 Flying Point Road, Southampton, NY 11968

2

(4) 769 County Road 39A, Southampton, NY 11968

(5) 749 County Road 39A, Southampton, NY 11968

(6) 1540 County Road 39A, Southampton, NY 11968

(7) 25 Hill Street, Southampton, NY 11968

4.   Advances.  The Bank may, from time to time in its sole and absolute discretion, make an Advance to Dealer or on behalf of the Dealer to manufacturers, sellers, or distributors of Financed Inventory (each such manufacturer or distributor being a "Vendor") for the sole purpose of enabling the Dealer to acquire Financed Inventory, provided, however, that nothing in this Agreement is intended, nor shall it be construed, obligate the Bank to extend credit to or at the request of the Dealer or to be a commitment or offer to extend credit to the Dealer.

(a)   General Limitations.  Without limiting the generality of the foregoing, at no time shall the aggregate amount of unpaid Advances exceed **$20,072,203 or such other greater amount that the Bank shall determine from time to time.   Any Advance to Dealer shall be governed by this Agreement, unless otherwise provided in writing by the Bank.**  In addition, the maximum amount which the Bank may advance in any one day shall not exceed the aggregate sum of $500,000.  In connection with an Advance, Dealer shall execute and deliver to the Bank such instruments, documents, and certificates as the Bank may request, including but not limited to certificates of title and manufacturer's certificate of origin with accompanying documents. The Bank may conclusively rely on the purported signature of any person purporting to act on behalf of the Dealer with respect to an Advance or any other purpose under this Agreement.

(b)   Sub-limitations.  In addition to any other limitation which may be established by the Bank, the Bank may from time to time establish sub-limits for Advances for Financial Inventory with respect to new items, used items, demonstration items, specific models and/or makes, specific year(s) of manufacturer, or such other categories as the Bank in its sole discretion may determine.

(c)   Advances on New Inventory.  If the Dealer has made arrangement with the Bank and BMW and/or Daimler Chrysler ("Vendor"), to have such Financed Inventory shipped to it with drafts drawn on the Bank, the Bank is hereby authorized in its sole and absolute discretion to pay any and all such drafts purporting to be drawn by each such Vendor.  Such draft shall in no event exceed the amount of the manufacturer's invoice.  The Bank shall have no responsibility for the validity, sufficiency or genuineness of any such draft and the Bank shall not be under any duty to require that any bills of lading, certificates of origin or documents of title be required as a condition of payment of any such draft.  The Bank shall have no responsibility to determine whether any of the Financed Inventory has been shipped or whether any breach of contract has occurred under any agreement relating thereto between the Vendor and the Dealer of any other person, firm or corporation. The Dealer agrees to indemnify and save the Bank harmless from and against any demands, claims, actions, costs, loss liability, damage or expense of any kind, including counsel fees, however arising, from and in connection with the transactions contemplated by this paragraph.

(d)   Advances on Used Inventory.  Each advance shall in any event be limited to the least of (a) 100% of NADA trade-in value; or (b) dealer cost.  Notwithstanding the foregoing, Auction Value may be advanced if purchased at a recognized auction, as determined by the Bank.  In addition, Dealer shall pay a per unit origination fee of $N/A, to be debited from Dealer's accounts at the Bank.

(e)   Advances on Service Loaners will not exceed in aggregate $750,000 at any time.
(f)    Advances on Demonstrators will not exceed in aggregate $705,000 at any time

(g)   The Bank does not make Advances against announced frame damaged and salvaged vehicles whether or not purchased at auction.

3

5.  Dealer's Advance Account. Each Advance made hereunder shall be entered by Bank as a debit in Dealer's Advance Account. The Bank shall also enter a debit or credit, as the case may be, to Dealer's Advance Account all other charges, expenses and other items properly chargeable to the Dealer in accordance with this agreement and Bank's customary practice, including, but not limited to, all amounts expended by Bank in each year or part thereof during which this agreement is in effect for the filing or recording of financing statements under the Code and any documents necessary or desirable under applicable law, any other out of pocket costs in connection herewith, all payments made by the Dealer on account of the indebtedness evidenced hereby and recorded in the Dealer's Advance Account, and all cash proceeds of Collateral applied by the Bank to the satisfaction of Dealer's Advance Account. The Bank's statement with respect to the balance in the Dealer Advance Account shall conclusively evidence the amount of the Dealer's indebtedness to the Bank from time to time by reason of Advances and other charges hereunder, absent manifest error.

6.  Curtailments. The Dealer hereby promises to pay to the Bank the amount of the debit balance of Dealer's Advance Account as follows:

    (a)  With respect to new Financed Inventory, if the Dealer shall not have repaid in full the original amount of the Advance with respect to any item of Financed Inventory prior to the expiration of the following periods of time, then Dealer shall without further notice or demand, pay curtailments as follows:

         ☒    Five (5%) percent per month of the original Advance (i.e., invoice) each April through August in the year following the model year. A final curtailment of seventy-five (75%) percent of original Advance paid in full in September of that year.

    (b)  With respect to used Financed Inventory, if the Dealer shall not have repaid in full the original amount of the Advance with respect to any item of Financed Inventory prior to the expiration of the following periods of time, then Dealer shall without further notice or demand, pay curtailments as follows:

         ☒    (i)    Zero (0%) percent of the original amount of the Advance one hundred eighty (180) days from the date of the Advance; and
              (ii)   Two (2%) percent of the original amount of the Advance every thirty (30) until three hundred sixty (360) days from the date of the Advance; and
              (iii)  Three (3%) percent of the original amount of the Advance every thirty (30) until five hundred forty (540) days from the date of the Advance; and
              (iv)   Five (5%) percent of the original amount of the Advance every thirty (30) until seven hundred twenty (720) days from the date of the Advance; and
              (v)    Ten (10%) percent of the original amount of the Advance every thirty (30) until paid in full at eight hundred forty (840) days from the date of the Advance.

    (c)  With respect to Service Loaner inventory, two (2%) percent per month of the original Advance upon its designation by the Bank in its sole discretion as a service loaner, paid in full in the twelfth month.

    (d)  With respect to Demonstrator Inventory, two (2%) percent per month of the original Advance upon its designation by the Bank in its sole discretion as a demonstrator, paid in full in the twelfth month.

    (e)  Without limiting the generality of paragraph 17 of this Agreement, the Bank may waive any particular curtailment due but no such waiver is intended, nor shall it be construed, to be a waiver of any other curtailments.

7.  Interest.

    (a) Rate. The Dealer agrees to pay the Bank on demand, but not less than monthly, interest on the daily unpaid balance in Dealer's Advance Account at a rate equal at all times to the percent per annum above/below the Bank's "prime rate" as published from time to time computed on a 365/360 basis (each change in such interest rate to take effect simultaneously with a corresponding change in such prime rate), as indicated below, or at such other rate as Bank and Dealer may mutually agree upon in writing from time to time hereafter. The prime rate published by the Bank is not intended to be the lowest rate of interest

4

charged by the Bank in connection with its extension or credit to debtors.

(b) <u>Default Rate</u>. The Dealer agrees to pay the Bank on demand interest on the daily unpaid balance in Dealer's Advance Account at a rate of twenty-four (24%) percent per annum on and after the occurrence of an Event of Default and until the entire unpaid balance in Dealer's Advance Account has been fully paid, both before and after the entry of any judgment.

In no event shall the interest payable under this Agreement, either before or after the occurrence of an Event of Default, exceed the maximum rate permitted under applicable New York or Federal Law.

| | | |
|---|---|---|
| ☒ | New | NFB Prime Rate plus 0.50% |
| ☒ | Demonstrator/loaner | NFB Prime Rate plus 0.50% |
| ☒ | Used | NFB Prime Rate plus 0.50% |

8.  <u>Sales of Collateral; Disposition of Proceeds of Sale</u>. The Dealer may not sell, assign, transfer or otherwise dispose of any Collateral without the Bank's prior written consent, <u>provided, however</u>, that until an Event of Default shall have occurred, the Dealer may sell Inventory in the ordinary course of the Dealer's business and in no event with respect to Financed Inventory shall the Bank receive less than the debit balance of the Dealer's Advance Account allocable to such sold Financed Inventory, plus, if then required by the Bank, accrued interest thereon and any other fees and charges owed with respect to such sold Inventory. The foregoing conditional consent is not intended and shall not be construed to waive or release the Bank's security interest in any and all proceeds (in whatever form) of the Inventory. The Dealer shall hold all proceeds of disposition of Inventory as trustee for the Bank and shall not commingle, sell, assign or otherwise dispose of such proceeds without the prior written consent of the Bank, and shall forthwith pay over such proceeds directly to the Bank as follows: (a) within two (2) calendar days for cash sales, swaps between dealerships, auction sales, and dealer sales; and (b) within the earlier of ten (10) calendar days or when funded for non-cash transactions, retail contracts and lease contracts.

9.  <u>Covenants</u>.
    (a)   At its sole expense, the Dealer shall insure the Collateral at all times for the full insurable value thereof against casualty and theft and against such other risks, in such form and with such insurers, as may be satisfactory to the Bank from time to time. In addition, each such policy shall name the Bank as mortgagee and loss payee as its interest may appear and name the Bank as an additional insured relating to liability risks, provide that no act of omission or commission or misrepresentation or breach of warranty by the Dealer shall affect the Bank's rights thereunder, provide that the Bank shall not be liable for any premiums or other amounts and provide that the insurer shall give the Bank not less than at least 30 days' prior written notice of cancellation or lapse. If the Dealer shall fail at any time to maintain such insurance, the Bank may obtain such insurance coverage and the Dealer agrees to reimburse the Bank therefor on demand with interest thereon at the rate specified in paragraph 7. The Dealer shall notify the Bank promptly if any loss or casualty relating to the Collateral occurs.
    (b)   The Dealer shall maintain the Collateral in good condition and operate the Collateral with reasonable care and caution and the Dealer hereby indemnifies and holds the Bank harmless from any and all loss, damage and liability suffered, incurred or asserted by or against the Bank as a result of the use and operation of the Collateral. Where required by applicable law, all inspections, maintenance, modifications, repairs, and overhauls of the Inventory shall be performed by personnel authorized and licensed by applicable governmental authority to perform such services.
    (c)   The Dealer shall promptly pay all taxes, assessments and license fees levied, assessed or imposed against the Collateral or the use thereof.
    (d)   The Dealer shall at all times keep accurate, complete and detailed records and accounts at its principal place of business of the Collateral, its location and status and reflecting all financial transactions of the Dealer. The Dealer shall immediately notify the Bank of any casualty or other event causing the loss in the value of the Collateral or Financed Inventory and the amount of such loss. Dealer shall furnish the Bank (i) as soon as available and in any event within one hundred twenty (120) days after the end of each fiscal year, an annual **audited** financial statement prepared

5

in accordance in generally accepted accounting principles consistently applied complete with statements of profit and loss, cash flows and balance sheet in form and detail acceptable to the Bank, (ii) as soon as available and in any event within thirty (30) days after the end of each month, an internally prepared "factory" financial statement in form and detail acceptable to the Bank, (iii) as soon as available and in any event by May 15th of each calendar year, its annual federal tax return complete with all schedules, (iv) as soon as available and in any event within one hundred twenty (120) days of calendar year end a statement of financial condition on Bank form of all personal guarantors; (v) as soon as available and in any event by May 15th of each calendar year, the respective federal tax returns of each personal and corporate guarantor; (vi) as soon as available and in any event within one hundred twenty (120) days after the end of each fiscal year, an annual **audited** financial statement of the corporate guarantors (operating dealerships) and an annual **compiled** financial statement of all other corporate guarantors prepared in accordance in generally accepted accounting principles consistently applied complete with statements of profit and loss, cash flows and balance sheet in form and detail acceptable to the Bank, (vii) as soon as available and in any event within thirty (30) days after the end of each quarter of the guarantors (operating dealerships), an internally prepared "factory" financial statement in form and detail acceptable to the Bank, (viii) with reasonable promptness, such other information respecting the condition, financial or otherwise as the Bank may reasonably request from time to time and (ix) notice of the occurrence of an Event of Default or the occurrence of any conditions or event which has or may have a material adverse effect upon the financial condition, operations, or properties of the Dealer.

(e)   The Bank (and its designated agents and representatives) may from time to time audit and inspect the Collateral wherever located and examine and make copies of and abstracts from the books and records of the Dealer, and discuss any of the foregoing with the officers, directors and employees of the Dealer. Dealer shall pay a per Collateral audit fee of $N/A to be deducted from the Dealer's accounts with the Bank. In addition, the Bank has a right, but not the obligation, to maintain at such time or times it deems appropriate on the Dealer's premises a monitor to review on an ongoing basis all transactions with respect to the collateral. Upon request Dealer shall deliver to the Bank for safekeeping all documents of title with respect to the collateral.

(f)   The Dealer will maintain a minimum Capital Base of $2,500,000 at 12/31/05 as per the audited fiscal financial statements.

(g)   The Dealer shall not create or suffer to exist any lien, security interest or other charge or encumbrance upon or with respect to any of the Collateral without the Bank's prior written consent.

(h)   The Dealer will maintain a current ratio of 1.00 to 1.00 at ☐ fiscal year end☐ semi-annually ☒ quarterly ☐ monthly ☐ at all times; to be defined as current assets divided by current liabilities.

(i)   The Dealer will maintain a net leverage ratio not to exceed 1.00 to 1.0 at ☐ fiscal year end ☐ semi-annually ☒ quarterly ☐ monthly ☐ at all times;

(j)   Dealer shall meet or exceed all requirements of manufacturers of Dealers Inventory for working capital and other financial measures and shall provide proof thereof if requested, to the Bank, including but not limited to Dealer's worksheets submitted to such manufacturers to evidence compliance.

(k)   The Dealer shall comply in all respects with all applicable laws, rules, regulations, and orders (judicial and administrative) enacted, issued, adopted or entered by any governmental authority having jurisdiction over the Dealer or any of its properties.

(l)   The Dealer will maintain vehicle equity of $N/A at ☐ fiscal year end ☐ semi-annually ☐ quarterly ☐ monthly ☐ at all times;

(m)   The Dealer will maintain a vehicle equity ratio of N/A to 1.0 at ☐ fiscal year end ☐ semi-annually ☐ quarterly ☐ monthly ☐ at all times;

(n)   The distribution of earnings by the Dealer in any fiscal year is to be limited to the amount needed to satisfy the prior year's tax liability of the dealership.

(o)   **The Dealer is prohibited from making loans, advances, investments, payments, prepayments and other amounts to the owners or employees of the Dealer beyond what is shown on the April 2004 Factory Statement**

(p)   **The Dealer is prohibited from making investments in or advances to any other entities or assets directly or not directly related to the business of the Dealer beyond what is shown on the April 2004 Factory Statement**

10.   Events of Default. Each of the following events shall be an "**Event of Default**":

6

(a) the non-payment of any of the Obligations, or

(b) the failure of the Dealer to observe or perform any other term, provision or condition of this Agreement

(c) dissolution or termination of existence of, or the suspension or termination of operations of, the Dealer, or

(d) the inability of the Dealer, or the Dealer's admission that it is unable, to pay its debts as they become due or any petition in bankruptcy is filed by or against the Dealer, or any proceeding in bankruptcy, or under any other laws of any jurisdiction relating to the relief of debtors is commenced against the Dealer for the relief or readjustment of any indebtedness of the Dealer, either thorough reorganization, composition, extension or otherwise, or

(e) the appointment of a receiver of any property of the Dealer, or

(f) the making by the Dealer of any assignment for the benefit of creditors or the taking advantage of any insolvency law, or

(g) any seizure, vesting, or intervention by or under authority of a government, by which the management of the Dealer is displaced or its authority in the conduct of its business is curtailed, or

(h) the issuance of a judgment, execution, garnishment, or levy against Dealer or the attachment or distraint of any funds or other property of the Dealer which may be in or come into the Bank's possession or under the Bank's control, or that of any third party acting for the Bank, or of the same becoming subject at any time to any mandatory order of court or other legal process, or

(i) any representation or warranty contained herein shall prove to be materially false when made, or

(j) the Bank believes in good faith that the prospect for payment of the Obligations out of the Collateral or otherwise has become materially impaired or

(k) the loss, theft, damage, destruction of any of the inventory which casualty is not fully covered by insurance or the attachment, levy or seizure of any collateral, or

(l) the Dealer fails to make any payment of amount when due (whether at stated maturity, required prepayment, by acceleration, on demand or otherwise) on any other indebtedness of any kind owed to any third party or the Dealer's failure to perform or observe any term, covenant, or condition to be performed or observed by it under any agreement or instrument, if the such failure permits the obligee to accelerate the maturity of the indebtedness so owed.

(m) the occurrence of an event of default under any other agreement, instrument or document with the Bank, whether or not given in connection with this Agreement or otherwise, including but not limited to any guaranty.

(n) the occurrence of any of the foregoing with respect to any guarantor of the Dealer.

11. Remedies. Upon the occurrence of any one or more of such Events of Default, the Bank may declare all Obligations to be immediately due and payable and the Bank may exercise in respect of the Collateral all the rights and remedies of a secured party on default under the Code in effect in New York at that time (whether or not the Code applies to the affected Collateral). The Dealer consents that without further notice or demand, and with or without legal process, the Bank may personally, by its agents or its attorneys enter upon the premises of the Dealer (whether owned, leased or licensed) for the purpose of taking possession of and removing the Collateral. The Dealer agrees, on request by the Bank, that at its expense, it will promptly assemble all or part of the Collateral as directed by the Bank and make it available to the Bank at a place to be designated by the Bank which is reasonably convenient to both parties. The Bank may sell all or any Collateral in one or more parcels at public or private sale, at any of the Bank's offices or elsewhere, for cash, on credit or for future delivery, and upon such other terms as the Bank may deem commercially reasonable. The Dealer agrees that whenever notice of sale shall be required by law, not less than ten (10) days' notice to the Dealer of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification. The Bank shall not be obligated to sell the Collateral regardless of the giving of any notice of sale and the Bank may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned. All cash proceeds received by the Bank resulting from the disposition of or collection from the Collateral may be held by the Bank as collateral for the Obligations and/or then or at any time thereafter applied in payment of all or any of the Obligations in such order as the Bank shall elect. The balance of such cash proceeds held by the Bank and remaining after payment in full of the Obligations shall be paid over to the Dealer or to the person who may be lawfully entitled to such balance. The remedies provided in this Agreement are cumulative and not exclusive of any other remedies provided by law including, without limitation, any rights of setoff available to the Bank.

12. Further Assurances. The Dealer agrees promptly to execute and deliver all further instruments and documents (including financing statements and amendments thereto and preferred ship mortgages, Aircraft mortgages, vessel documentation and Aircraft registration documents), and take all further action, that may

7

be necessary or desirable, or that the Bank may request, in order to perfect and protect any security interest granted or purported to be granted hereby or to enable the Bank to exercise and enforce its rights and remedies hereunder with respect to any Collateral, all at the expense of the Dealer. The Dealer hereby authorizes the Bank to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Collateral without the signature of the Dealer where permitted by law.

13. <u>Bank Appointed Attorney-in-Fact</u>.  The Dealer hereby irrevocably appoints the Bank its lawful attorney-in-fact with full authority on behalf of the Dealer and in the name of the Dealer or otherwise, to take any action and to execute any instrument or document (including, without limitation, financing statements, amendments thereto, preferred ship mortgages, Aircraft mortgages, vessel documentation and Aircraft registration documents) from time to time in the Bank's discretion which the Bank may deem necessary or advisable to accomplish the purposes of this Agreement including, without limitation, obtaining and adjusting insurance, demanding, collecting, compromising, giving acquittance and receipts for proceeds of Collateral, receiving, endorsing, and collecting drafts or other instruments, documents and chattel paper, filing any claims or take any action or institute any legal proceedings.

14. <u>Bank's Duty of Care</u>.  The rights and powers of the Bank under this Agreement are solely to protect its interest in the Collateral and shall not impose any duty upon it to exercise any such powers. Except for the safe custody of any Collateral in its possession and the accounting for moneys actually received by it hereunder, the Bank shall have no duty as to any Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral.

15. <u>Costs and Expenses</u>.  The Dealer will pay to the Bank on demand the amount of any and all expenses, including but not limited to the reasonable fees and disbursements of its counsel and of any experts and agents, which the Bank may incur in connection with:
   (a) the administration of the Agreement,
   (b) the inspection, custody, preservation, use of operation of, or the sale or disposition of or collection or realization from any of the Collateral,
   (c) the exercise or enforcement of any of the rights of the Bank hereunder regardless of whether an action is commenced and if an action is commenced, whether in trial court, appellate court, bankruptcy court or otherwise or
   (d) the failure by the Dealer to perform or observe any of the provisions of this Agreement.

16. <u>Continuing Security Interest</u>.  This Agreement creates a continuing assignment of and security interest in the Collateral. **This Agreement shall terminate on 6/01/07 unless sooner terminated pursuant to the provisions hereof.**  This Agreement may be terminated upon the Bank's receipt of written notice by the Dealer to such effect, may be terminated by the Bank by written notice to such effect sent to the Dealer or may be terminated by operation of law but any such termination shall be ineffective as to any Obligations or security interest in existence as of the time of such termination. Notwithstanding such termination, if the Dealer thereafter requests an Advance and the Bank agrees in its sole discretion to make an Advance, any such Advance shall reinstate this Agreement with respect to such transaction, subject to any modifications as determined by the Bank in its sole discretion. Upon termination, Dealer shall promptly pay to the Bank all amounts outstanding hereunder. This Agreement shall be binding upon the Dealer, its successors, and assigns and inure to the benefit of, and be enforceable by, the Bank its successors, transferees and assigns.  The Bank may transfer and assign the Obligations, this Agreement and the Bank's rights hereunder whereupon the Bank shall, to the extent permitted by law, be fully discharged of liability and responsibility to the Dealer and whereupon such transferee shall be vested with all of the Bank's rights in the Obligations and this Agreement.

17. <u>Miscellaneous</u>.  Paragraph headings used in this Agreement are for convenience only and shall not affect the construction of this Agreement. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to its conflicts of laws rules and applicable laws of the United States.  No amendment or waiver of any provision of this Agreement nor consent to any departure by the Dealer herefrom, shall in any event be effective unless the same shall be in writing and signed by the Bank and then such waiver or consent shall be effective only in the specific instance and for the specific instance and for the specific purpose for which given.  No failure or delay on the part of the Bank in exercising any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy hereunder.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction only, be ineffective to the extent of such prohibition or unenforceability but the remaining provisions of this Agreement shall be valid and

enforceable. All payments due under this Agreement shall be paid to the Bank in same day funds at its address at 275 Broad Hollow Road, Melville, New York, or at such other address as the Bank shall designate from time to time. Without limiting the right of the Bank to bring any action or proceeding against the Dealer or against property of the Dealer arising out of or relating to any Obligation or this Agreement (an **"Action"**) in the courts of other jurisdictions, the Dealer hereby irrevocably submits to the jurisdiction of any New York State or federal court sitting in or for Suffolk County, State of New York and the Dealer hereby irrevocably agrees that any Action may be heard and determined in such state or federal court. The Dealer hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of any Action in any jurisdiction. The Dealer hereby irrevocably agrees that the summons and complaint or any other process in any Action in any jurisdiction may be served by mailing to any of the addresses set forth below or by hand delivery to a person of suitable age and discretion at any of the addresses set forth below.

18.    Notices.    All notices and other communication provided for hereunder shall be in writing (including telecopier, telegraphic, telex or cable communication) and mailed or delivered at such addresses, and, if to the Dealer, mailed or telegraphed or delivered to it, addressed to it at its address first set forth above and, if to the Bank, addressed to it at its address at 275 Broad Hollow Road, Melville, NY 11747 or as to either party at such other address as shall be designated by party in a written notice to the other party complying as to delivery with the terms of this Section. All such notices and communications shall, when mailed, telecopied, telegraphed, telexed or cabled, be effective when deposited in the mail, telecopied, delivered to the telegraph company, confirmed by telex answerback or delivered to the cable company, respectively, addressed as aforesaid, provided, however, that notices to the Bank shall be effective when received.

19.    Bank's Retail Financing Plans.    The Dealer hereby agrees to use its best efforts to promote the use of any retail installment financing plan available to purchasers of Inventory which the Bank may maintain from time to time and to offer to the Bank the chattel paper arising from such financed sales.

20.    Waiver of Jury Trial.    Each of the Dealer and the Bank irrevocably waives all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement, the Obligations or the Collateral.

DEALER:                                COUNTRY IMPORTED CAR CORP.

                                       By: X
                                       Name: Michael Caruso
                                       Title: VMP.

DEALER'S PRINCIPAL OFFICE:             35 Montauk Highway, Southampton, NY 11968

ADDITIONAL LOCATIONS:
32 Montauk Highway, Southampton, NY 11968, 759 Flying Point Road, Southampton, NY 11968,
769 County Road 39A, Southampton,NY 11968, 749 County Road 39A, Southampton, NY 11968,
1540 County Road 39A, Southampton, NY 11968 and 25 Hill Street, Southampton, NY 11968.

BANK:                                  NORTH FORK BANK

                                       By:_____

STATE OF N Y          )
                      ) ss.:
COUNTY OF Suffolk     )

On the 28th day of Feb , in the year 2007 before me, the undersigned, personally appeared Michael Caruso personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or the person on behalf of which the individual acted, acted, executed the instrument.

Kathleen Marie Allaimo                                    Revision 01/05

NOTARY PUBLIC.
KATHLEEN MARIE ALAIMO
Notary Public, State of New York
No. 52-4797299
Qualified in Suffolk County
Commission Expires April 30, 20 09

9

**MODIFICATION AGREEMENT**

MODIFICATION AGREEMENT (this "Agreement")  made as of the 24th day of

July, 2007 (the "Effective Date") by and between COUNTRY IMPORTED CAR CORP.,

a New York corporation, having its principal office at 35 Montauk Highway,

Southampton, New York 11968 (hereinafter called the "Dealer"), and NORTH FORK

BANK, a New York banking corporation,  having an address at 275 Broad Hollow Road,

Melville, New York 11747 (hereinafter called the "Bank").

## RECITALS

WHEREAS, the Dealer and the Bank entered into a Credit and Security

Agreement, dated February 1, 2007 (the "Floor Plan Agreement"), whereby, among

other things, the Bank agreed to finance the acquisition by the Dealer of various goods

in connection with the Dealer's retail business; and

WHEREAS, the Dealer and the Bank desire to amend the Floor Plan Agreement,

subject to and in accordance with the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises contained herein

and for other good and valuable consideration, the receipt and sufficiency of which are

hereby acknowledged, the parties agree as follows:

## ARTICLE I

### Definitions

1.1    The recitals are specifically incorporated into the body of this Agreement

and shall be binding upon the parties hereto.

1.2    Unless expressly set forth to the contrary and except as modified by this Agreement, all defined terms shall have the meanings as ascribed to them in the Floor Plan Agreement.

## ARTICLE II

### Floor Plan Agreement Modifications

2.1    From and after the Effective Date, the debt evidenced pursuant to the Floor Plan Agreement is hereby reallocated, modified and amended pursuant to the schedule annexed hereto as Exhibit 1 and made a part hereof.

2.2    The maturity date of the Floor Plan Agreement is hereby extended through and including June 24, 2008.

## ARTICLE III

### Ratification; Miscellaneous

3.1    The Dealer represents and warrants that the Floor Plan Agreement is presently in full force and effect, that no event of default has occurred on the part of the Bank and that the Dealer has no defense or right of offset in connection with the Bank's performance under the Floor Plan Agreement to this date.

3.2    The parties hereby ratify and confirm all of the terms, covenants and conditions of the Floor Plan Agreement, except to the extent that those terms, covenants, conditions are amended, modified or varied by this Agreement.  If there is a conflict between the provisions of the Floor Plan Agreement, and the provisions of this Agreement, the provisions of this Agreement shall control.

IN WITNESS WHEREOF, the parties have executed this Modification Agreement as of the day and year first above written.

COUNTRY IMPORTED CAR CORP.

By: _____

NORTH FORK BANK

By: _____
Name: Thomas H. Harris
Title:  Divisional Senior Vice President

**ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE**

State of New York, County of Suffolk, ss:

On the ¸-24th day of July in the year 2007, before me, the undersigned, personally appeared _Joseph Manno_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

MICHAEL P. LICITRA
Notary Public, State of New York
No. 01LI4899145
Qualified in Nassau County
Commission Expires June 22, 2011

EXHIBIT 1
Floor Plan Debt Reallocation

| Line Accommodation | | |
|---|---|---|
| BMW/Mini Floor Plan | | |
| New BMW (A) | | $8,000,000.00 |
| New Mercedes Benz (B) | | $0.00 |
| Used | | $1,250,000.00 |
| Demo | | $705,000.00 |
| Service | | $700,000.00 |
| Guidance (C) | | $2,000,000.00 |
| Designated Inventory (D) | | $0.00 |
| BMW Other (E) | | $2,000,000.00 |
| TOTAL CICC FLOOR PLAN (F) | | $14,655,000.00 |

## SECOND MODIFICATION AGREEMENT

SECOND MODIFICATION AGREEMENT (this "Agreement")  made as of the 2⁷ᵗʰ day of May, 2008 (the "Effective Date") by and between COUNTRY IMPORTED CAR CORP. ("Dealer"), a New York corporation, having its principal office at 35 Montauk Highway, Southampton, New York 11968, and CAPITAL ONE, N.A., SUCCESSOR BY MERGER TO NORTH FORK BANK ("CAPITAL ONE"), a national banking association,  having an address at 275 Broad Hollow Road, Melville, New York 11747.

### RECITALS

WHEREAS, the Dealer and North Fork Bank ("NFB") entered into a Credit and Security Agreement, dated February 1, 2007 (the "Country IC Floor Plan Agreement"), whereby, among other things, NFB agreed to finance the acquisition by the Dealer of various goods in connection with the Dealer's retail business;

WHEREAS, by Modification Agreement dated July 24, 2007, the terms of the Country IC Floor Plan Agreement were modified;

WHEREAS, on or about August 1, 2007, NFB merged with and into CAPITAL ONE; and

WHEREAS, the Dealer and CAPITAL ONE desire to further amend the Country IC Floor Plan Agreement, subject to and in accordance with the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I

### Definitions

1.1    The recitals are specifically incorporated into the body of this Agreement and shall be binding upon the parties hereto.

1.2    Unless expressly set forth to the contrary and except as modified by this Agreement, all defined terms shall have the meanings as ascribed to them in the Country IC Floor Plan Agreement.

## ARTICLE II

### Country IC Floor Plan Agreement Modifications

2.1    The maturity date of the Country IC Floor Plan Agreement is hereby extended through and including July 7, 2008.

2.2    On or before July 7, 2008, the aggregate principal amount outstanding under the terms of the Country IC Floor Plan Agreement and the Credit and Security Agreement dated February 1, 2007, as modified, between Country, Cadillac, Buick, Pontiac and GMC Truck, LLC and NFB ("Country Cadillac Floor Plan Agreement"), must be less than, and remain less than, $19,800,000.00, in which event the maturity date of the Country IC Floor Plan Agreement shall be extended through and including July 18, 2008.

2.3    On or before July 18, 2008, the aggregate principal amount outstanding under the terms of the Country IC Floor Plan Agreement and Country Cadillac Floor Plan Agreement must be less than, and remain less than, $18,800,000.00, in which

event the maturity date of the Country IC Floor Plan Agreement shall be extended through and including July 25, 2008.

2.4    On or before July 25, 2008, the aggregate principal amount outstanding under the terms of the Country IC Floor Plan Agreement and Country Cadillac Floor Plan Agreement must be less than, and remain less than, $17,800,000.00, in which event the maturity date of the Country IC Floor Plan Agreement shall be extended through and including August 25, 2008.

ARTICLE III

Ratification; Miscellaneous

3.1    The Dealer represents and warrants that the Country IC Floor Plan Agreement is presently in full force and effect, that no event of default has occurred on the part of CAPITAL ONE and that the Dealer has no defense or right of offset in connection with CAPITAL ONE's performance under the Country IC Floor Plan Agreement to this date.

3.2    The parties hereby ratify and confirm all of the terms, covenants and conditions of the Country IC Floor Plan Agreement, except to the extent that those terms, covenants, conditions are amended, modified or varied by this Agreement. If there is a conflict between the provisions of the Country IC Floor Plan Agreement, and the provisions of this Agreement, the provisions of this Agreement shall control.

IN WITNESS WHEREOF, the parties have executed this Second Modification Agreement as of the day and year first above written.

COUNTRY IMPORTED CAR CORP.

By: _____

CAPITAL ONE, N.A., successor by merger to NORTH FORK BANK

By: _____
Name: Frederick Knodel
Title:  Vice President

State of New York, County of Suffolk, ss:

On the _26_ day of May in the year 2008, before me, the undersigned, personally appeared _Joseph T. Marra_ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

JUDITH A. FITZGERALD
NOTARY PUBLIC-STATE OF NEW YORK
No. 01FI6153051
Qualified in Suffolk County
My Commission Expires September 25, 20_10_

_____
Notary Public

State of New York, County of Suffolk, ss:

On the _26_ day of May in the year 2008, before me, the undersigned, personally appeared _Frederick Knodel_ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

JUDITH A. FITZGERALD
NOTARY PUBLIC-STATE OF NEW YORK
No. 01FI6153051
Qualified in Suffolk County
My Commission Expires September 25, 20_10_

## THIRD MODIFICATION AGREEMENT

THIRD MODIFICATION AGREEMENT (this "Agreement") made effective as of the 25th day of August, 2008 (the "Effective Date") by and between COUNTRY IMPORTED CAR CORP. ("Dealer"), a New York corporation, having its principal office at 35 Montauk Highway, Southampton, New York 11968, and CAPITAL ONE, N.A., SUCCESSOR BY MERGER TO NORTH FORK BANK ("CAPITAL ONE"), a national banking association, having an address at 275 Broad Hollow Road, Melville, New York 11747.

### RECITALS

WHEREAS, the Dealer and North Fork Bank ("NFB") entered into a Credit and Security Agreement, dated February 1, 2007 (the "Country IC Floor Plan Agreement"), whereby, among other things, NFB agreed to finance the acquisition by the Dealer of various goods in connection with the Dealer's retail business;

WHEREAS, by Modification Agreement dated July 24, 2007, the terms of the Country IC Floor Plan Agreement were modified;

WHEREAS, on or about August 1, 2007, NFB merged with and into CAPITAL ONE;

WHEREAS, by a Second Modification Agreement dated as of May 21, 2008 (the "Second Modification Agreement"), the terms of the Country IC Floor Plan Agreement were further modified; and

WHEREAS, the Dealer and CAPITAL ONE desire to further amend the Country IC Floor Plan Agreement, subject to and in accordance with the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I

### Definitions

1.1    The recitals are specifically incorporated into the body of this Agreement and shall be binding upon the parties hereto.

1.2    Unless expressly set forth to the contrary and except as modified by this Agreement, all defined terms shall have the meanings as ascribed to them in the Country IC Floor Plan Agreement.

## ARTICLE II

### Country IC Floor Plan Agreement Modifications

2.1    The maturity date of the Country IC Floor Plan Agreement is hereby extended through and including June 15, 2009.

2.2    Notwithstanding the Dealer's failure to comply with certain terms and conditions contained in the Second Modification Agreement, CAPITAL ONE may, in its sole and absolute discretion, make additional Advances to the Dealer in connection with the purchase of new Financed Inventory from the manufacturer, provided that nothing in this Agreement is intended, nor shall it be construed, to obligate CAPITAL ONE to extend credit to or at the request of the Dealer or to be a commitment or offer to extend credit to the Dealer.

2.3    Dealer acknowledges and agrees that, as of March 20, 2009, it is "out of trust" with CAPITAL ONE in the aggregate amount of $2,211,113.00 (the "SOT Amount") and, therefore, an Event of Default currently exists under the Country IC Floor Plan Agreement.

CAPITAL ONE hereby agrees to forebear from exercising its rights and remedies with respect to the aforementioned Event of Default so long as Dealer does not otherwise default in its obligations under the Country IC Floor Plan Agreement, as modified, and/or this Agreement. Nothing contained herein shall be deemed to waive Dealer's obligation to pay the SOT Amount to CAPITAL ONE.

2.4    Notwithstanding anything to the contrary contained in the Country IC Floor Plan Agreement, as modified, in the event the Dealer fails to immediately pay to CAPITAL ONE the proceeds acquired from the sale of any Financed Inventory and is, therefore "out of trust", CAPITAL ONE may, in its sole and absolute discretion, declare such failure to be an Event of Default without the necessity for any grace periods otherwise provided by Section 8 of the Country IC Floor Plan Agreement. In such event, CAPITAL ONE shall be entitled to all of the rights and remedies set forth in the Country IC Floor Plan Agreement, at law and in equity, with respect to both the aforementioned Event of Default and the Event of Default currently existing with respect to the SOT Amount.

### ARTICLE III

#### Ratification; Miscellaneous

3.1    The Dealer represents and warrants that the terms and conditions of the Country IC Floor Plan Agreement, as subsequently modified, are presently in full force and effect, that no event of default has occurred on the part of CAPITAL ONE and that the Dealer has no defense or right of offset in connection with CAPITAL ONE's performance under the Country IC Floor Plan Agreement, as subsequently modified, to this date.

3.2    The parties hereby ratify and confirm all of the terms, covenants and conditions of the Country IC Floor Plan Agreement, except to the extent that those terms, covenants,

conditions are amended, modified or varied by this Agreement. If there is a conflict between the provisions of the Country IC Floor Plan Agreement, and the provisions of this Agreement, the provisions of this Agreement shall control.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties have executed this Third Modification Agreement as of the day and year first above written.

COUNTRY IMPORTED CAR CORP.

By: _____

CAPITAL ONE, N.A., successor by merger to NORTH FORK BANK

By: _____
Name: Frederick Knodel
Title:  Vice President

ACKNOWLEDGE AND AGREED
TO BY ALL GUARANTORS:

COUNTRY CADILLAC, BUICK, PONTIAC AND GMC TRUCK, LLC

By: _____
Name: _____
Title: _____

COUNTRY LINCOLN MERCURY SALES, INC.

By: _____
Name: Vincent Caruso
Title: _____

IMPORT REALTY LTD.

By: _____
Name: Michael Caruso
Title: VP.

COUNTRY IMPORTED MOTOR CORP.

By:
Name: Michael Caruso
Title: VP.

COUNTRY FORD LTD.

By:                                    VP
Name: Vincent Caruso
Title: VP.

Vincent C. Caruso

Michael A. Caruso

Joseph T. Marro

COUNTRY MANAGEMENT CORP.

By:
Name:
Title:

Vincent LaRosa

State of New York, County of Suffolk, ss:

On the 8 day of ~~March~~ (March) in the year 2009, before me, the undersigned, personally appeared VINCENT LARSEN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

TAYANEE SYKES
Notary Public, State Of New York
No. 01SY6170586, Suffolk County
Commission Expires July 9, 20 11

State of New York, County of Suffolk, ss:

On the 8 day of ~~March~~ April in the year 2009, before me, the undersigned, personally appeared Michael Caruso, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

TAYANEE SYKES
Notary Public, State Of New York
No. 01SY6170586, Suffolk County
Commission Expires July 9, 20 11

State of New York, County of Suffolk, ss:

On the 8 day of ~~March~~ April in the year 2009, before me, the undersigned, personally appeared Vincent Caruso, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

TAYANEE SYKES
Notary Public, State Of New York
No. 01SY6170586, Suffolk County
Commission Expires July 9, 20 11

State of New York, County of Suffolk, ss:

On the 8 day of ~~March~~ April in the year 2009, before me, the undersigned, personally appeared Joseph T. Marro, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

TAYANEE SYKES
Notary Public, State Of New York
No. 01SY6170586, Suffolk County
Commission Expires July 9, 20 11

## FOURTH MODIFICATION AGREEMENT

FOURTH MODIFICATION AGREEMENT (this "Agreement") made effective as of the 15th day of June, 2009 (the "Effective Date") by and between COUNTRY IMPORTED CAR CORP. ("Dealer"), a New York corporation, having its principal office at 35 Montauk Highway, Southampton, New York 11968, and CAPITAL ONE, N.A., SUCCESSOR BY MERGER TO NORTH FORK BANK ("CAPITAL ONE"), a national banking association, having an address at 275 Broad Hollow Road, Melville, New York 11747.

### RECITALS

WHEREAS, the Dealer and North Fork Bank ("NFB") entered into a Credit and Security Agreement, dated February 1, 2007 (the "Country IC Floor Plan Agreement"), whereby, among other things, NFB agreed to finance the acquisition by the Dealer of various goods in connection with the Dealer's retail business;

WHEREAS, by Modification Agreement dated July 24, 2007, the terms of the Country IC Floor Plan Agreement were modified;

WHEREAS, on or about August 1, 2007, NFB merged with and into CAPITAL ONE;

WHEREAS, by a Second Modification Agreement dated as of May 21, 2008 (the "Second Modification Agreement"), the terms of the Country IC Floor Plan Agreement were further modified; and

WHEREAS, by a Third Modification Agreement dated as of August 25, 2008 (the "Third Modification Agreement"), the terms of the Country IC Floor Plan Agreement were further modified; and

WHEREAS, the Dealer and CAPITAL ONE desire to further amend the Country IC Floor Plan Agreement, subject to and in accordance with the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

<div align="center">

ARTICLE I

Definitions

</div>

1.1     The recitals are specifically incorporated into the body of this Agreement and shall be binding upon the parties hereto.

1.2     Unless expressly set forth to the contrary and except as modified by this Agreement, all defined terms shall have the meanings as ascribed to them in the Country IC Floor Plan Agreement.

<div align="center">

ARTICLE II

Country IC Floor Plan Agreement Modifications

</div>

2.1     The maturity date of the Country IC Floor Plan Agreement is hereby extended through and including September 1, 2009.

2.2     Notwithstanding the Dealer's failure to comply with certain terms and conditions contained in the Third Modification Agreement, CAPITAL ONE may, in its sole and absolute discretion, make additional Advances to the Dealer in connection with the purchase of new Financed Inventory from the manufacturer, provided that nothing in this Agreement is intended, nor shall it be construed, to obligate CAPITAL ONE to extend credit to or at the request of the Dealer or to be a commitment or offer to extend credit to the Dealer.

<div align="center">2</div>

2.3    Dealer acknowledges and agrees that, as of August 7, 2009, it is "out of trust" with CAPITAL ONE in the aggregate amount of $1,822,276.00 (the "SOT Amount") and, therefore, an Event of Default currently exists under the Country IC Floor Plan Agreement. CAPITAL ONE hereby agrees to forebear from exercising its rights and remedies with respect to the aforementioned Event of Default so long as Dealer does not otherwise default in its obligations under the Country IC Floor Plan Agreement, as modified, and/or this Agreement, or the Second Forbearance Agreement dated as of June 15, 2009 between CAPITAL ONE and, inter alia, Dealer. Nothing contained herein shall be deemed to waive Dealer's obligation to pay the SOT Amount to CAPITAL ONE.

2.4    Notwithstanding anything to the contrary contained in the Country IC Floor Plan Agreement, as modified, in the event the Dealer fails to immediately pay to CAPITAL ONE the proceeds acquired from the sale of any Financed Inventory and is, therefore "out of trust", CAPITAL ONE may, in its sole and absolute discretion, declare such failure to be an Event of Default without the necessity for any grace periods otherwise provided by Section 8 of the Country IC Floor Plan Agreement. In such event, CAPITAL ONE shall be entitled to all of the rights and remedies set forth in the Country IC Floor Plan Agreement, at law and in equity, with respect to both the aforementioned Event of Default and the Event of Default currently existing with respect to the SOT Amount.

ARTICLE III

Ratification; Miscellaneous

3.1    The Dealer represents and warrants that the terms and conditions of the Country IC Floor Plan Agreement, as subsequently modified, are presently in full force and effect, that no event of default has occurred on the part of CAPITAL ONE and that the Dealer has no defense

3

or right of offset in connection with CAPITAL ONE's performance under the Country IC Floor Plan Agreement, as subsequently modified, to this date.

3.2     The parties hereby ratify and confirm all of the terms, covenants and conditions of the Country IC Floor Plan Agreement, except to the extent that those terms, covenants, conditions are amended, modified or varied by this Agreement.  If there is a conflict between the provisions of the Country IC Floor Plan Agreement, and the provisions of this Agreement, the provisions of this Agreement shall control.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties have executed this Third Modification Agreement as of the day and year first above written.

COUNTRY IMPORTED CAR CORP.

By: _____
Michael Caruso

CAPITAL ONE, N.A., successor by merger to NORTH FORK BANK

By: _____
Name: Frederick Knodel
Title:  Vice President

ACKNOWLEDGE AND AGREED
TO BY ALL GUARANTORS:

COUNTRY CADILLAC, BUICK, PONTIAC AND GMC TRUCK, LLC

By: _____
Name:
Title:

COUNTRY LINCOLN MERCURY SALES, INC.

By: _____
Name:
Title:  Pres.

IMPORT REALTY LTD.

By: _____
Name: Michael Caruso
Title:  Pres.

5

COUNTRY IMPORTED MOTOR CORP.

By:
Name: Michael Caruso
Title: V.P.

COUNTRY FORD LTD.

By:
Name: Michael Caruso
Title: V.P.

_____
Vincent C. Caruso

_____
Michael A. Caruso

_____
Joseph T. Marro


COUNTRY MANAGEMENT CORP.

By:
Name: Joseph MARRO
Title: V.P.

_____
Vincent LaRosa

6

State of New York, County of Suffolk, ss:

On the 17th day of August in the year 2009, before me, the undersigned, personally appeared FREDERICK KNODEL, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

JENNIFER L. SILVESTRO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02SI6044395 - SUFFOLK COUNTY
COMMISSION EXPIRES JULY 3, 2012

_____
Notary Public

State of New York, County of Suffolk, ss:

On the 17th day of August in the year 2009, before me, the undersigned, personally appeared VINCENT C. CARUSO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

JENNIFER L. SILVESTRO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02SI6044395 - SUFFOLK COUNTY
COMMISSION EXPIRES JULY 3, 2012

_____
Notary Public

State of New York, County of Suffolk, ss:

On the 17th day of August in the year 2009, before me, the undersigned, personally appeared MICHAEL A. CARUSO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

JENNIFER L. SILVESTRO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02SI6044395 - SUFFOLK COUNTY
COMMISSION EXPIRES JULY 3, 2010

_____
Notary Public

7

State of New York, County of Suffolk, ss:

On the 17 day of August in the year 2009, before me, the undersigned, personally appeared JOSEPH T. MARRO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

JENNIFER L. SILVESTRO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02SI6044395 - SUFFOLK COUNTY
COMMISSION EXPIRES JULY 3, 20 10

State of New York, County of Suffolk, ss:

On the 17 day of August in the year 2009, before me, the undersigned, personally appeared VINCENT LAROSA, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

JENNIFER L. SILVESTRO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02SI6044395 - SUFFOLK COUNTY
COMMISSION EXPIRES JULY 3, 20 10

8

EXHIBIT "B"

THIS FINANCING STATEMENT is presented to a Filing Officer for filing pursuant to the Uniform Commercial Code.

| | No. of Additional Sheets Presented: | 3. ☐ The Debtor is a transmitting utility. |
|---|---|---|

| 1. Debtor(s) (Last Name First) and Address(es): | 2. Secured Party(ies) Name(s) and Address(es): | 4. For Filing Officer: Date, Time, No. Filing Office |
|---|---|---|
| Country Imported Car Corp. 35 Montauk Highway Southampton, NY 11968 | North Fork Bank 9025 Route 25 Mattituck, NY 11952 | 063 28 |

5. This Financing Statement covers the following types (or items) of property:

See Attached Schedule "A"

6. Assignee(s) of Secured Party and Address(es):

☐ Products of the Collateral are also covered.

7. ☐ The described crops are growing or to be grown on:*
☐ The described goods are or are to be affixed to:*
☐ The lumber to be cut or minerals or the like (including oil and gas) is on:*
*(Describe Real Estate Below)

| 8. Describe Real Estate Here: | ☐ This statement is to be indexed in the Real Estate Records: | 9. Name of a Record Owner |
|---|---|---|

| No. & Street | Town or City | County | Section | Block | Lot |
|---|---|---|---|---|---|

10. This statement is filed without the debtor's signature to perfect a security interest in collateral (check appropriate box)
☐ under a security agreement signed by debtor authorizing secured party to file this statement, or
☐ which is proceeds of the original collateral described above in which a security interest was perfected, or
☐ acquired after a change of name, identity or corporate structure of the debtor, or ☐ as to which the filing has lapsed, or already subject to a security interest in another jurisdiction:
☐ when the collateral was brought into the state, or ☐ when the debtor's location was changed to this state.

Country Imported Car Corp.                    North Fork Bank

By _____    By _____

Signature(s) of Debtor(s)                    Signature(s) of Secured Party(ies)

(1) FILING OFFICE COPY · NUMERICAL

(5/82)          STANDARD FORM—FORM UCC-1—Approved by Secretary of State of New York

**FILING NUMBER: 074538    FILING DATE: 04/14/1997**

## SCHEDULE "A"

ALL PERSONAL PROPERTY NOW OWNED OR HEREAFTER ACQUIRED BY THE DEBTOR INCLUDING BUT NOT LIMITED TO ALL GOODS, CONSUMER GOODS, FARM PRODUCTS, INVENTORY, EQUIPMENT, FURNITURE, FIXTURES, MONEY, INSTRUMENTS, ACCOUNTS, ACCOUNTS RECEIVABLE, CONTRACT RIGHTS, DOCUMENTS, CHATTEL PAPER AND GENERAL INTANGIBLES, ALL OF WHICH COLLECTIVELY IS THE "COLLATERAL".

ALL PRODUCTS OF COLLATERAL AND ALL ADDITIONS AND ACCESSIONS TO, REPLACEMENTS OF, INSURANCE OR CONDEMNATION PROCEEDS OF, AND DOCUMENTS COVERING COLLATERAL, ALL PROPERTY RECEIVED WHOLLY OR PARTLY IN TRADE OR EXCHANGE FOR COLLATERAL, ALL LEASES OF COLLATERAL AND ALL RENTS, REVENUES, ISSUES, PROFITS AND PROCEEDS ARISING FROM THE SALE, LEASE, LICENSE, ENCUMBRANCE, COLLECTION, OR ANY OTHER TEMPORARY OR PERMANENT DISPOSITION OF THE COLLATERAL OR ANY INTEREST THEREIN.

Debtor:
Country Imported Car Corp.

Secured Party:
North Fork Bank

By: _____

By: _____

Dated: 3/24/97

Dated: 3/24/97

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**738809**

2001 NOV 21  PM 3: 15

| 8

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:  [Name and Address]**

Intercounty Clearance Corp.
440 Ninth Avenue
New York, NY 10001

D74022201 34324    NY, *CENTRAL*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**  974538 .........04/14/1997

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of the Secured Party authorizing this Termination Statement.

**3. [X] CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4. ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.

**6. CURRENT RECORD INFORMATION:**

**7. CHANGED (NEW) OR ADDED INFORMATION:**

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

9a. ORGANIZATION'S NAME  NORTH FORK BANK

**10. OPTIONAL FILER REFERENCE DATA**
DEBTOR: COUNTRY IMPORTED CAR CORP.

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV.07/29/98)

**FILING NUMBER: 228454   FILING DATE: 11/21/2001**

**804292**        **2006 Oct 20 PM03:26**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> UCC Direct Services
> 2727 Allen Parkway
> Houston, TX 77019, USA
> nyack@uccdirect.com

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE #  074539 Filedate: 14-APR-97 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
| --- | --- |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c. ☐ DELETE name: Give record name to be deleted in item 6a or 6b. ☐ ADD name: Complete item 7a or 7b, and also item 7c, also complete items 7d-7g (if applicable).

6. **CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. **CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any ☐ NONE |
| --- | --- | --- | --- | --- |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME   NORTH FORK BANK | | | |
| --- | --- | --- | --- |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA  NY-0-22321776-20825 FLOOR PLAN

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

## Filing Number-200610206026057

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

706727          2001 OCT -9 PM 12: 01

**B. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

18

Intercounty Clearance Corp.
440 Ninth Avenue
New York, NY 10001

#D6435901 34324      NY, *CENTRAL*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
COUNTRY IMPORTED CAR CORP

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1 HILLSIDE AVE | PORTCHESTER | NY | 10573 | |

1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION CORPORATION | 1f. JURISDICTION OF ORGANIZATION NEW YORK | 1g. ORGANIZATIONAL ID #, if any [X]NONE

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

[ ]NONE

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
NORTH FORK BANK

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 245 LOVE LANE | MATTITUCK | NY | 11952 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

A FIRST SECURITY INTEREST ON ALL ASSETS OF THE BORROWER AS FURTHER DEFINED ON THE ATTACHED SCHEDULE "A".

5. ALTERNATIVE DESIGNATION (if applicable): LESSEE/LESSOR  CONSIGNEE/CONSIGNOR  BAILEE/BAILOR  SELLER/BUYER  AG. LIEN  NON-UCC FILING

FILING OFFICE COPY -   NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Print/Layout by: Intercounty Clearance Corp
440 9TH AVENUE, New York, NY 10007

**FILING NUMBER: 192252   FILING DATE: 10/09/2001**

## SCHEDULE A

ALL PERSONAL PROPERTY NOW OWNED OR HEREAFTER ACQUIRED BY
THE DEBTOR INCLUDING BUT NOT LIMITED TO ALL GOODS,
CONSUMER GOODS, FARM PRODUCTS, INVENTORY, EQUIPMENT,
FURNITURE, FIXTURES, MONEY, INSTRUMENTS, ACCOUNTS, ACCOUNTS
RECEIVABLE, CONTRACT RIGHTS, DOCUMENTS, CHATTEL PAPER AND
GENERAL INTANGIBLES, ALL OF WHICH COLLECTIVELY IS THE
"COLLATERAL".

ALL PRODUCTS OF COLLATERAL AND ALL ADDITIONS AND
ACCESSIONS TO, REPLACEMENTS OF, INSURANCE OR CONDEMNATION
PROCEEDS OF, AND DOCUMENTS COVERING COLLATERAL, ALL
PROPERTY RECEIVED WHOLLY OR PARTLY IN TRADE OR EXCHANGE
FOR COLLATERAL, ALL LEASES OF COLLATERAL AND ALL RENTS,
REVENUES, ISSUES, PROFITS AND PROCEEDS ARISING FROM THE SALE,
LEASE, LICENSE, ENCUMBRANCE, COLLECTION, OR ANY OTHER
TEMPORARY OR PERMANENT DISPOSITION OF THE COLLATERAL OR
ANY INTEREST THEREIN.

ASSET

706727

2010 OCT -9  PM 12: 01

739867          2006 Apr 24 PM04:51

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

┌
UCC Direct Services
2727 Allen Parkway
Houston, TX 77019, USA
nyack@uccdirect.com
└

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE #   192252 Filed date: 09-OCT-01 | 1b.  This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor _or_ ☐ Secured Party of record. Check only _one_ of these two boxes.
Also check one of the following three boxes _and_ provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any ☐NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only _one_ box.

Describe collateral ☐ deleted  or  ☐ added,  or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment).  If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME  NORTH FORK BANK | | | |
|---|---|---|---|
| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA NY-0-20539908-20625

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

## Filing Number-200604245393717

# EXHIBIT "C"

## LAZER, APTHEKER, ROSELLA & YEDID, P.C.

### ATTORNEYS AT LAW
_____

MELVILLE LAW CENTER
225 OLD COUNTRY ROAD
MELVILLE, NEW YORK 11747-2712

JENNIFER L. SILVESTRO
(631) 761-0856

TELEPHONE (631) 761-0800
FACSIMILE (631) 761-0015
E-MAIL ADDRESS: silvestro@larypc.com

## WE ARE ATTEMPTING TO COLLECT A DEBT.
## ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

January 8, 2010

**Via Certified Mail/RRR and Regular Mail**

Country Imported Car Corp.
Attn: Joseph Marro, President
35 Montauk Highway
Southampton, N.Y. 11968

> Re:    Credit and Security Agreement dated February 1, 2007 (as amended,
> restated, supplemented or otherwise modified from time to time, the
> "Country IC Floor Plan Loan")

Dear Mr. Marro:

We represent Capital One, N.A. ("Capital One"), pertaining to the above-referenced Country IC Floor Plan Loan. Pursuant to a Second Forbearance Agreement dated as of June 15, 2009 ("Forbearance Agreement"), various loans (the "Loans"), including the Country IC Floor Plan Loan were acknowledged to be in default and Capital One agreed to forbear until September 1, 2009 from exercising any rights to collect the sums owed to it provided certain conditions were met. Those conditions were not met and the Forbearance Agreement has now expired by its terms. In addition, the Country IC Floor Plan Loan, as modified by certain agreements including the Fourth Modification Agreement dated as of June 15, 2009, is in default as it matured on September 1, 2009 and Country Imported Car Corp. ("CICC") has failed to pay all the sums due and owing. Another basis for default is that CICC has consistently been, and continues to be, out of trust. Finally, the aforementioned events constitute the happening of an event or events that, in the reasonable judgment of Capital One, adversely affects the ability of the respective borrowers of each of the loans that were the subjects of the Forbearance Agreement to repay the amounts owed to Capital One.

Moreover, pursuant to a letter agreement dated June 18, 2009, Michael Caruso and

Certified Article Number    SENDERS RECORD    7160 3901 9848 1510 8063

January 8, 2010
Page 2

Vincent Caruso, both individually and on behalf of each of the borrowers and guarantors of the Loans, acknowledged that defaults exist as of the date of that letter and are uncured for each and every one of the Loans.

Accordingly, as to the Country IC Floor Plan Loan, Capital One hereby elects to declare the entire principal balance of $4,206,238.00, together with accrued interest and any applicable fees including any late fees, as of January 8, 2009 to be immediately due and payable, together with reasonable attorneys fees. Please be advised that Capital One is entitled to default interest pursuant to the terms of the loan documents.

Prompt payment is expected from the borrower or the guarantors, who are referenced below as recipients of a copy of this letter.

Any payments received after this date will not reinstate the loan, which will remain due and payable. Any such payment, if received, will be applied first to interest, then to late fees and then to principal.

Very truly yours,

JENNIFER L. SILVESTRO

cc:    Raymond A. Peck, Esq.
       35 Montauk Highway, Suite B
       Southampton, NY 11968

       Guarantors:

       Country Cadillac, Buick, Pontiac and GMC Truck, LLC
       Attn: Michael Caruso, Member
       305 West Jericho Turnpike
       Huntington, N.Y. 11743

       Country Lincoln Mercury Sales, Inc.
       Attn: Vincent Caruso, President
       333 West Jericho Turnpike
       Huntington, N.Y. 11743

January 8, 2010
Page 3

Import Realty Ltd.
Attn: Joseph Marro, President
35 Montauk Highway, Suite B
Southampton, N.Y. 11968

Country Imported Motor Corp.
Attn:  Vincent Caruso, President
331 West Jericho Turnpike
Huntington, N.Y. 11743

Country Ford Ltd.
Attn: Vincent Caruso, Secretary
210 Gardiners Avenue
Levittown, N.Y. 11756

Country Management Corp.
Attn:  Vincent Caruso, President
147 W. 11th Street
Huntington, N.Y. 11746

Vincent C. Caruso
1116 Cove Edge Road
Syosset, N.Y. 11791

Michael A. Caruso
1340 Millstone Road
Sag Harbor, N. Y. 11963

Joseph T. Marro
11 Bridle Path East
Port Washington, N.Y. 11050

Carol Caruso
1116 Cove Edge Road
Syosset, N.Y. 11791

January 8, 2010
Page 4

Eva L. Marro
11 Bridle Path East
Port Washington, N.Y. 11050

Vincent LaRosa
92 E. Shore Drive
Massapequa, N.Y. 11758

EXHIBIT "D"

646196          2002 JUL -8  PM 4: 25

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Corporation Service Company

**CSC 45**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Country Imported Car Corp. | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 749 County Road 39A | Southampton | NY | 11968 | |

| 1d. TAX ID #. SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| 11-2902964 | | Corporation | New York | □ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Country Imported Car Corp. | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 55 Montauk Highway | Southampton | NY | 11968 | |

| 2d. TAX ID #. SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| 11-2902964 | | Corporation | New York | □ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BMW of North America, LLC | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 300 Chestnut Ridge Road | Woodcliff Lake | NJ | 07677 | |

**4. This FINANCING STATEMENT covers the following collateral:**

"A Purchase Money Security interest in all unpaid BMW motor vehicles, including but not limited to BMW automobiles, Sports Activity Vehicles/light trucks, motorcycles, MINI vehicles, tools, special tools, equipment, signage, warranty advances, holdbacks, incentives, warranty credits, parts and accessories, Lifestyle products and gift articles that are manufactured or sold by Bayerische Motoren Werks AG and/or BMW of North America, LLC (collectively "BMW") and/or bear trademarks of BMW, all accessions and additions thereto and all proceeds of any of the foregoing, including insurance proceeds, and a security interest in and right of setoff with respect to all credits and rights to payments (e.g. holdbacks, bonuses, incentives, warranty credits and the like) held by BMW, its subsidiaries and affiliates for the account of debtor, and as to all of the foregoing whether now owned or hereafter acquired.

| 5. ALTERNATIVE DESIGNATION (if applicable): | □ LESSEE/LESSOR | □ CONSIGNEE/CONSIGNOR | □ BAILEE/BAILOR | □ SELLER/BUYER | □ AG. LIEN | □ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. □ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional] | | □ All Debtors | □ Debtor 1 | □ Debtor 2 |

**8. OPTIONAL FILER REFERENCE DATA**
MINI/SAV # 86343                    CSC ID:169931 NY-Secretary of State

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

**FILING NUMBER: 157741   FILING DATE: 07/08/2002**

**709298**          **2007 Jan 24 PM04:26**

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Corporation Service Company

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

```
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703, USA
support_center@cscinfo.com
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE #  157741 Filedate: 08-JUL-02 | 1b.  This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor  or  ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted  or  ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. **NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME  BMW OF NORTH AMERICA, LLC | | | |
|---|---|---|---|
| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

## Filing Number-200701245091864

405380          2009 Feb 13 PM04:32

## UCC FINANCING STATEMENT
FOLLOW  INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Liz Watkins 615-315-4547

**B. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

Ford Motor Credit Company
P. O. Box 680020
Franklin, TN 37068, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME  Country Imported Car Corp. | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS P. O. Box 680020 | CITY  Franklin | STATE TN / POSTAL CODE 37068 | COUNTRY USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION corporation | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any NONE | X NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  Ford Motor Credit Company LLC | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS P. O. Box 680020 | CITY  Franklin | STATE TN / POSTAL CODE 37068 | COUNTRY USA |

**4. This FINANCING STATEMENT covers the following collateral:**
&#61472;Equipment, furniture, machinery, demonstrators/service vehicles, supplies and other goods of every kind.

¿ Motor vehicles, tractors, trailers, implements, service parts/ accessories, other inventory of every kind and any accessions thereto.

¿ Accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligations thereto.

¿ Fixtures located at the above address and at any other address from which the above debtor conducts business now or in the future.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum | [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-200902138056145

**405402**     **2009 Feb 16 AM09:42**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Liz Watkins 615-315-6547

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Ford Motor Credit Company
P. O. Box 689020
Franklin, TN 37068, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| | |
|---|---|
| 1a. INITIAL FINANCING STATEMENT FILE #   200902138056145 Filedate: 13-FEB-09 | 1b.  This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects [X] Debtor  or  ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

[X] CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

6a. ORGANIZATIONS NAME  Country Imported Car Corp.

| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

7a. ORGANIZATION'S NAME  Country Imported Car Corp.

| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 7c. MAILING ADDRESS P. O. BOX 839 Montauk Hwy | CITY  Southampton | STATE NY | POSTAL CODE 11968 | COUNTRY USA |
|---|---|---|---|---|

| 7d.  SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION corporation | 7f. JURISDICTION OF ORGANIZATION NY | 7g. ORGANIZATIONAL ID #, if any NONE                   [X] NONE |
|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted  or  ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME  FORD MOTOR CREDIT COMPANY LLC

| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

## Filing Number-200902168056379

**405500**          **2010 Feb 22 PM02:49**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Andrew Presberg, Esq. (631) 232-4444

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Law Offices of Andrew Presberg P.C.
100 Corporate Plaza
Islandia, NY 11749, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME  IMPORT REALTY LTD. | | | | |
|---|---|---|---|---|
| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS 35 Montauk Highway | CITY  Southampton | STATE NY | POSTAL CODE 11968 | COUNTRY USA |
| ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION New York | | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME  Country Imported Car Corp. | | | | |
|---|---|---|---|---|
| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS 35 Montauk Highway | CITY  Southampton | STATE NY | POSTAL CODE 11968 | COUNTRY USA |
| ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION Corporation | 2f. JURISDICTION OF ORGANIZATION New York | | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME   East Hills Managment Services, Ltd. | | | | |
|---|---|---|---|---|
| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS 10 Melville Park Road | CITY  Melville | STATE NY | POSTAL CODE 11747 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:
All assets, including proceeds and/or replacements thereof.

5. ALTERNATIVE DESIGNATION [if applicable]: [ ] LESSEE/LESSOR   [ ] CONSIGNEE/CONSIGNOR   [ ] BAILEE/BAILOR   [ ] SELLER/BUYER   [ ] AG. LIEN   [ ] NON-UCC FILING

6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum   [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional]   [ ] All Debtors   [ ] Debtor 1   [ ] Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-201002228057062**

**410854**

2003 FEB 26 AM 9:00

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone:(800) 331-3282      Fax: (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)      511173 ITRINITY

UCC Direct Services        **5716151**
P.O. Box 29071
Glendale, CA 91209-9071      NYNY

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
COUNTRY IMPORTED CAR CORP.

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 35 MONTANK HIGHWAY | SOUTH HAMPTON | NY | 11968 | |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
Trinity Capital Corporation

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 475 Sansome 19th Floor | San Francisco | CA. | 94111 | |

4. This FINANCING STATEMENT covers the following collateral:
ALL AUTOMOTIVE AND RELATED EQUIPMENT, LEASED OR FINANCED FROM TRINITY CAPITAL CORPORATION INCLUDING, BUT NOT LIMITED TO THOSE ITEMS AND PROCEEDS THEREOF, SET FORTH IN THE AGREEMENT LISTED BELOW AND IN ANY AND ALL SUBSEQUENT ADDENDUMS AND SCHEDULES TO THE AGREEMENT. AGREEMENT # ~816371 DBA: SOUTH HAMPTON MERCEDES BENZ~

| 5. ALTERNATIVE DESIGNATION (if applicable) | [ ] LESSEE/LESSOR | [ ] CONSIGNEE/CONSIGNOR | [ ] BAILEE/BAILOR | [ ] SELLER/BUYER | [ ] AG. LIEN | [ ] NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | [ ] All Debtors | [ ] Debtor 1 | [ ] Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA
5716151                         001                              816371

Prepared by UCC Direct Services, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

FILING OFFICE COPY - NATIONAL UCC FINA **FILING NUMBER: 200302260426680**

827653          **2007 Dec 26 PM07:21**

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

    ⌐UCC Direct Services
     2727 Allen Parkway
     Houston, TX 77019, USA
     nyack@uccdirect.com

     ⌐                                                    ⌐

                                    THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE #  200302260426680 Filedate: 26-FEB-03 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor _or_ ☐ Secured Party of record.  Check only _one_ of these two boxes.

Also check _one_ of the following three boxes _and_ provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any ☐ NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only _one_ box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment).  If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME  TRINITY CAPITAL CORPORATION | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA  NY-0-27653117-816371 001 SOUTH HAMPTON MERCEDES BENZ

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

### Filing Number-200712266259779

# EXHIBIT "E"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

Index No. 269-42194

-------------------------------------------------x
TRUSTEES OF THE LOCAL 210 UNITY WELFARE
and PENSION FUNDS and LOCAL 210 AFL-CIO

Address of Plaintiff:
529 Broadway
Massapequa, NY 11758

Plaintiffs,

-against-

**JUDGMENT BY CONFESSION**

COUNTRY IMPORTED CAR CORP.

**ENTERED:** OCT 22 2009
AT: 128 pm

Defendants.

-------------------------------------------------x

Amount Confessed ............................................................. $289,871.84
Interest...(289,871.84 x 7% = 20,291 % 12= $1,690.92 (a month) ............ 1,690.92

$291,562.76

Costs by Statute................................................................ 15.00
Transcript......................................................................... 15.00
Fees on Execution ....COST @ 294.00..... OCT 22 2009 ........... 50.00
Filing Fee .......................................................................... 210.00
Certification Fee....Judith A. Pascale........................................4.00

Total...................$291,856.76

STATE OF NEW YORK, COUNTY OF NASSAU, ATTORNEY'S AFFIRMATION

The undersigned attorney at law of the State of New York, affirms that she is Danielle M. Carney an associate of Barnes, Iaccarino & Shepherd, LLP, attorney(s) of record for the Plaintiff herein and states that the disbursements above specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: 10/20/09

Danielle M. Carney, Esq.

JUDGMENT entered the 22 day of Oct 2009.

On filing the foregoing affidavit of Confession of Judgment made by the defendant herein, sworn on August 7, 2009.

3 Surrey Lane Hempstead NY 11550

NOW, ON MOTION of Barnes, Iaccarino & Shepherd, LLP by Danielle M. Carney, attorney(s) for Plaintiff, it is;

ADJUDGED that the Plaintiff, residing at 529 Broadway, Massapequa, NY 11758, do recover of Defendant, residing at 35 Montauk Highway, South Hampton. NY 11968, the sum of $289,871.84 with interest of $1,690.92 making a total of $291,562.76 together with $294.00 costs and disbursements, amounting in all to the sum of $291,856.76 and that the Plaintiff have execution therefore.

Clerk

$ 291,562.76
cld    294.00
(Total) $ 291,856.76

 FILED
2009 OCT 22 PM 1:28
JUDITH A. PASCALE
SUFFOLK COUNTY CLERK

**New York State Department of**
# Taxation and Finance
Civil Enforcement - DO - High Value
80-02 Kew Gardens Road
Kew Gardens NY 11415

 **Warrant**



## Commissioner of Taxation and Finance
against

| | |
|---|---|
| | Judgment<br>Creditor |

COUNTRY IMPORTED CAR CORP
T/A
BMW/MINI OF THE HAMPTONS
RR 2 BOX 830 35 MONTAUK HWY
SOUTHAMPTON, NY 11968-4122

Judgment
Debtor

Last Known
Address

**Warrant ID:**
E-005725405-W003-2

**County of Judgment:**
SUFFOLK

**Article of Tax Law:**
28/29

The people of the state of New York to:  S V CHACKO
an officer or employee of the Department of Taxation and Finance:  Whereas, a tax has been found due to the Commissioner of Taxation and Finance of the **state of New York** imposed by the above noted Article of Tax Law from the debtor named, the nature and amount of which, together with the interest and penalties thereon, are as follows:

| Assessment<br>ID | Period<br>Ending | Tax | Penalty | Interest | Assessment<br>Total |
|---|---|---|---|---|---|
| L-032981863-2 | 08/31/09 | $ 430,171.79 | $ 58,671.42 | $ 19,090.91 | $ 507,934.12 |
| L-032799956-2 | 05/31/09 | 551,304.28 | 95,373.47 | 53,147.23 | 699,824.98 |

Total amount due ➤ | $ 1,207,759.10

And whereas, said tax, interest and penalties now remain wholly unpaid:

**Now therefore, we command you** to file a copy of this warrant within five days after its receipt by you in the office of the clerk of the county named above, for entry by him in the judgment docket, pursuant to the provisions of the Tax Law.

**And we further command you,** that you satisfy said claim of said **Commissioner of Taxation and Finance** for said tax with penalties and interest out of the real and personal property in said county belonging to said debtor and the debts due to him at the time when said copy of this warrant is so docketed in the office of the clerk of such county or at any time thereafter; and that only the property in which said debtor who is not deceased has an interest or the debts owed to him shall be levied upon or sold hereunder; and return this warrant and pay the money collected, to the Commissioner of Taxation and Finance of the state of New York.

**Levy and collect** total amount due shown above plus accrued interest and any additional penalties provided by law.

Current interest rate  14.50 % per year on  $ 1,053,714.21 from  DECEMBER  26, 2009.
The interest rate may vary according to the Tax Law.

**Warrant** received at 9 o'clock A.M. on  DECEMBER  28, 2009.

Issued
By _____ for the Commissioner
Deputy Tax Commissioner   of Taxation and Finance

DTF-977 (7/95)